IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACK MURRAY,<br><br>        Plaintiff,<br><br>    v.<br><br>NESTLÉ USA INC., d/b/a NESTLÉ<br>CONFECTIONS & SNACKS,<br><br>        Defendant. | Case No. 10 C 3736<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Jack Murray (the "Plaintiff") has brought this Illinois state law claim of retaliatory discharge pursuant to diversity jurisdiction. Defendant Nestlé USA Inc. (hereinafter, "Nestlé") had previously brought a Rule 12(b)(6) Motion to Dismiss which the Court denied. Nestlé now brings a Motion for Summary Judgment.

### I. LEGAL STANDARD

While Illinois is an at-will employment state, it does recognize the tort of retaliatory discharge as an exception to the at-will rule where an employee is discharged for exercising his rights under the Illinois Workers' Compensation Act. To establish such a claim the Plaintiff must prove (1) his status as an employee of the defendant before injury; (2) his exercise of a right granted by the Workers' Compensation Act; and (3) a causal relationship between his discharge and the exercise of his right.

It is this last factor that is important in this case because Illinois has rejected the application of *McDonnell Douglas* to retaliatory discharge torts. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Illinois "requires proof of causation" and eschews the easier federal rule, which allows a plaintiff to avoid having to prove the employer's state of mind at the time of discharge. Recently, the Seventh Circuit, in *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 302-03 (7th Cir. 2010), clarified the matter because the applicability of *McDonnell Douglas* to State of Illinois retaliatory discharge torts had been an open question. The court in *Gacek* held that under the *Erie* doctrine where federal courts must apply state substantive law to diversity cases, the requirement of proof of causation in the context of this tort constituted state substantive law. In other words, *McDonnell Douglas* does not apply.

## II.  **BACKGROUND**

Now turning from the law to the facts, it appears that Plaintiff worked as a mechanic operator at Nestlé's Franklin Park, Illinois, facility from August 2009 to October 14, 2009. All employees in Plaintiff's job classification are represented by the Bakery, Confectionary, Tobacco Workers and Grain Miller International Union Local No. 1 (the "Union"), and the terms and conditions of employment are governed by a Collective Bargaining Agreement (the "CBA"). As a new hire Plaintiff became a member of

the Union after thirty (30) days, but was on probationary status for the first ninety (90) days of employment. During the probationary period, an employee such as Plaintiff is an at-will employee and can be terminated for any reason or no reason. Plaintiff understood he was to follow the instructions of Supervisory Facilitators Cory Adams ("Adams") and Sean Bontkowski ("Bontkowski"). He also was under the supervision of Lead Mechanic Operator, Moses Soria ("Soria").

On October 1, 2009, Plaintiff slipped and fell on the job injuring his back and neck. Although he was fully able to perform his job duties, he was directed by Adams to Nestlé's on-site nurse. She asked him about the circumstances of his fall and offered to send him home, which Plaintiff declined. Plaintiff completed a written report regarding his accident. The nurse provided Plaintiff with ibuprofen, a mild analgesic, and allowed him to return to work. The next day, Plaintiff had a follow-up meeting with the nurse and advised her that he still had some discomfort. She again supplied him with ibuprofen and allowed him to return to work. Plaintiff did not see a doctor regarding his injuries until after he had been discharged. Plaintiff has never made a claim under the Workers' Compensation Act for his injuries and he has never told Nestlé that he had any intention to make claim under the Act. In fact, while he was in the employ of Nestlé, it never occurred to him to make a claim for his injuries.

Starting on October 12, 2009, Plaintiff and Soria had two confrontations. The first came after Soria observed Plaintiff removing an air hose from its fitting and plugging it back in. Soria's stated concern was the air hose could be damaged because it was not designed to be unplugged and reattached. Plaintiff disputed this contention.

The second confrontation occurred when Soria told Plaintiff that a jam had occurred on his line which had not been cleared. Plaintiff disputed this also. Soria informed Bontkowski of the confrontations and reported that Plaintiff had made comments that Soria perceived as threats. Bontkowski later completed a performance coaching document that noted the alleged threatening comments. Plaintiff denied that he made any threats to Soria.

During the same evening Adams came over to observe Plaintiff's work. He noted that the line had broken down and was jamming, causing some production waste to accumulate. Adams noted that Plaintiff was cleaning up the waste and, in his view, was neglecting his line. He instructed Plaintiff to keep his attention on the line and assigned another individual to clean up the waste.

The next evening, another problem on Plaintiff's line occurred, causing the line to be shut down. After the problem was solved, Plaintiff had a confrontation with Adams over who should restart the line. Plaintiff described Adams as screaming when he told him that it was his responsibility to start the line. Later

that evening, Plaintiff and Adams had another confrontation over whether Plaintiff might damage the machine with which he was working. Plaintiff accused Adams of harassing him. Later that evening, Adams issued Plaintiff a written warning for not following instructions and taking action that could damage the machinery. Early in the morning of October 14, Bontkowski noticed Plaintiff having trouble with the cutting machine. An issue arose as to whether or to what extent Plaintiff sought out help. As a result, Bontkowski completed another coaching document, which noted that Plaintiff's interacting with others was not supporting production and recommended that Plaintiff be terminated prior to completion of his probationary period. At no point during any of the confrontations between Plaintiff and Adams, Soria, and Bontkowski was there any mention of an injury suffered by Plaintiff or the possibility of a workers' compensation claim.

The next morning, the Human Resources Manager, Nancy Wrede ("Wrede"), was met by Soria, who reported the potentially threatening comments made by Plaintiff. Wrede also read an e-mail from Adams concerning the written warning issued to Plaintiff based on the damage that could have happened to the machinery based on Plaintiff's actions. Wrede decided that Plaintiff was not working out and that Nestlé would be best served by terminating Plaintiff before he completed his probationary period and became protected by the "just cause" requirement of the CBA. Plaintiff learned of his

termination that evening.  The next day, October 15, Plaintiff received written confirmation that his employment was terminated due to substandard performance during his probationary period.

After receiving this notice, Plaintiff made a telephone complaint to Nestlé's business conduct line, apparently a hot line that is open to employees to express their grievances.  He also sent the business conduct line a letter that he had addressed to Wrede but had not delivered to her.  This letter made mention of his accident but did not make a claim that he had suffered any injury.  The context in which the accident is placed is that he had fallen as a result of an oil spill and that Adams lied about the alleged cleanup that Plaintiff claimed did not occur.

Plaintiff next went to the Union business agent with his complaints and documentary materials, and a grievance was submitted to Nestlé on his behalf asserting that Nestlé had terminated Plaintiff before fully investigating his conduct.  The grievance did not make mention of Plaintiff's workplace injury, even though the business agent had Plaintiff's letter to the business conduct line that mentioned the accident.  Nor did the grievance make any claim that his discharge was in any way related to Plaintiff's fall.  After receiving Plaintiff's grievance, Nestlé interviewed the individuals involved in the various incidents, the results of which Nestlé believed confirmed the reasons for his termination.

On November 18, Nestlé held a grievance meeting with the Union, which Plaintiff failed to attend. The meeting proceeded in Plaintiff's absence at the Union's insistence. The Union did not make any contention that the workplace injury, or the possibility of a workers' compensation claim, played any role in the discharge. On November 19, Wrede informed the Union that the grievance was denied. The Union Business Agent responded to Wrede that the Union considered the grievance settled and that he was closing his file and suggested that she do the same. (Plaintiff contends that this letter constitutes inadmissible hearsay and should not be considered. However, it is obviously a business record and thus admissible as an exception to the hearsay rule.)

### III. <u>DISCUSSION</u>

While Plaintiff can establish the first two prongs of an Illinois retaliatory discharge tort: (1) he was employed before and at the time of his injury, and (2) by seeking medical aid from the Nestlé nurse, he was exercising his rights under the Workers' Compensation Act, he has not produced a scintilla of evidence that his workplace injury had anything to do with the termination decision. In other words, he has not established a causal relationship between his exercise of his rights under the Workers' Compensation Act and the decision to discharge him.

Although Wrede had been informed that Plaintiff claimed to have fallen on some oil, she had not been told that he suffered any

injury.  Plaintiff agreed that it was Wrede's decision alone to terminate him, although he claims that Adams had input.  The facts are that Plaintiff did not see any doctor nor did he miss any work as a result of the fall and that the fall had occurred more than two weeks prior to discharge.  All of these facts militate Nestlé having any possible concern that Plaintiff might be intending to file a workers' compensation claim.

While Illinois law does not allow an employer, in an attempt to dissuade the filing of a workers' compensation claim, to threaten to fire the employee, there must be an intent to dissuade, otherwise there is no causation.  *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526 (1988).  Since he had not filed a workers' compensation claim at the time he was discharged, it was incumbent upon Plaintiff to provide some evidence that Nestlé discharged him because it believed he would file a workers' compensation claim.  The only evidence that Plaintiff provides is that there may have been a question of fact over whether he was a bad employee, whether he was insubordinate or whether he was a victim of unreasonable actions by his managers and facilitators.  It is conceivable that this might have been enough to get beyond summary judgment under the *McDonnell Douglas* framework (something we do not have to decide) but it is not enough to get past the Illinois requirement that he prove causation.  The argument that

Nestlé intended to do so constitutes nothing more than rank speculation.

## IV. CONCLUSION

For the reasons stated herein, Nestlé's Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　／s／ _____
　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 6/27/2011